IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2022 Session

## ALEJANDRO AVILA-SALAZAR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2005-A-32        Mark J. Fishburn, Judge**

_____

### No. M2020-01605-CCA-R3-PC

_____

Petitioner, Alejandro Avila-Salazar, appeals the post-conviction court's refusal to vacate his guilty plea to second-degree murder after the vacating his guilty plea to attempted aggravated rape based on trial counsel's failure to inform Petitioner that he would be subject to mandatory lifetime community supervision for the attempted aggravated rape conviction. The State argues that the post-conviction court erred by vacating the attempted aggravated rape conviction. Following our review of the entire record and the briefs of the parties, we reverse the judgment of the post-conviction court and remand the case for reinstatement of the original judgment of conviction and sentence previously imposed for attempted aggravated rape.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

Jay Umerley, Nashville, Tennessee, for the appellant, Alejandro Avila-Salazar.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual and Procedural History

On January 21, 2005, Petitioner was indicted by the Davidson County Grand Jury in Case No. 2005-A-32 for first-degree felony murder in count one and for attempted aggravated rape in count two. On September 6, 2006, Petitioner pled guilty to second-degree murder and attempted aggravated rape. Pursuant to the negotiated plea agreement, the trial court sentenced Petitioner out of range to forty years with a release eligibility of 100 percent for second-degree murder and to a concurrent sentence of twelve years as a standard offender for attempted aggravated rape.

*Guilty Plea Submission Hearing*

The facts of this case as set forth by the State at Petitioner's guilty plea submission hearing on September 6, 2006, are as follows:

> Had this case gone to trial on Monday, the State's proof would have been that on September 27, 2004, customers at a laundromat in Davidson County saw two Hispanics enter the laundromat and go into the restroom, some noises were heard from the bathroom, one of the witnesses assumed one of the Hispanics was getting sick. She told an employee about that. The employee went into the room, they found Emma Fuller, who was dead at the scene. The officers and the detectives in the case identified this [Petitioner] and Jose Gutierrez as suspects. Initially both denied involvement, however, when they learned [of] a video surveillance showing their vehicle from a nearby gas station, they both confessed. They said they picked up Emma Fuller, who was just 18-years-old and paid her $20 for sex, they rode around in the van until they came to the laundromat. Initially codefendant Gutierrez had sex with the victim in the bathroom. This [Petitioner] then went into the bathroom; however, Ms. Fuller refused to have vaginal sex with him, at that point, [Petitioner] told police that he went out and got Gutierrez and that they choked Ms. Fuller to try and get her to cooperate. [Petitioner] admits attempting to penetrate Ms. Fuller while she was being choked. Ms. Fuller collapsed with blood coming out of her nose and mouth. Both defendants poured water on her from the toilet in an attempt to revive her when they left.
>
> In addition to the evidence and the confession and the video mentioned, fingerprints from both defendants were also found in the bathroom.

Petitioner agreed to the facts as set forth by the State.

- 2 -

At the hearing, the trial court explained to Petitioner that he was charged with felony murder, which carried a mandatory sentence of "life in the penitentiary with parole, life in the penitentiary without parole or the death penalty, which is not being sought in this case[.]" The trial court further informed Petitioner that with a sentence of life without parole, he would have to "serve 51 years before [he] would be eligible to get out of prison[.]" Petitioner indicated that he understood. The trial court explained to Petitioner that he was also charged with attempt to commit aggravated rape, which carried a sentence of three to fifteen years and a fine of up to $10,000. Again, Petitioner indicated that he understood.

The trial court ensured that Petitioner understood that he was pleading guilty to the lesser-included offense of second-degree murder with a sentence of forty years to be served at one-hundred percent. The trial court noted that if the case had gone to trial, due to Petitioner's lack of prior felony convictions, the maximum sentence that it could have imposed was twenty-five years for second-degree murder. However, the trial court reminded Petitioner that if found guilty of first-degree murder at trial, then he would receive a mandatory life sentence. The trial court further explained:

> This agreement provides for you to plead to 40 years instead of the maximum 25 years that I could impose, which is permitted by law, do you agree to waive the maximum sentence for second[-]degree murder in order to bring - - enter this agreement and avoid going to trial and being subject to being found guilty of first[-]degree murder, do you understand that?

Petitioner ultimately said: "What I want is for you to just sentence me now to 40 years." He agreed that he was "willing to accept the 40-year sentence, which was above the range that [he] qualif[ied] in[.]" Petitioner had no questions about his charge, possible punishment, conviction offense, or actual punishment, and said that he understood his rights. He further told the trial court that he and trial counsel had discussed the case and that trial counsel had explained the evidence that the State would use against him at trial. They also discussed Petitioner's defense strategy, and he had no complaints about trial counsel's representation.

The trial court then ensured that Petitioner also understood that he was pleading guilty to attempted aggravated rape with a sentence of twelve years to be served at thirty percent as a Range I offender. The trial court advised Petitioner that the sentence would run concurrently with the sentence for second-degree murder for an effective sentence of forty years at one-hundred percent. There was no mention that Petitioner would be subject to community supervision for life.

The remainder of the procedural history of this case as set forth by this court on appeal of Petitioner's 2018 post-conviction petition is as follows:

**November 2006 Petition for Post-Conviction Relief.** Petitioner filed a timely Petition for Post-Conviction Relief alleging that his guilty pleas were not knowingly and intelligently entered because he received ineffective assistance of counsel. Following a hearing on March 10, 2008, the post-conviction court denied the petition. This court affirmed the denial. *Alejandro Avila-Salazar v. State*, No. M2008-02120-CCA-R3-PC, 2009 WL 3029604, at *5 (Tenn. Crim. App. Sept. 22, 2009), *perm. app. denied* (Tenn. Feb. 22, 2010).

**May 2014 Petition for Writ of Habeas Corpus**. Petitioner filed a Petition for Writ of Habeas Corpus "alleging that his guilty pleas were not knowingly and voluntarily entered because his sentence violated the jurisdictional limits of the trial court" and "that the indictment against him failed to apprise him of the offense that he was being called to defend." *Alejandro Avila-Salazar v. State*, No. M2014-01665-CCA-R3-HC, 2015 WL 739669, at *1 (Tenn. Crim. App. Feb. 20, 2015), *no perm. app. filed*. The habeas corpus court found that Petitioner failed to prove that his judgments were void and summarily denied the petition. This court affirmed. *Id.*

**June 2015 Petition for Writ of Habeas Corpus.** Petitioner then filed a Petition for Writ of Habeas Corpus in Wayne County, where he was incarcerated, in which he alleged that his sentence was illegal and the judgments were void because the judgment of conviction for attempted aggravated rape failed to include community supervision for life as required by Tennessee Code Annotated section 39-13-524(a). Following an evidentiary hearing on May 12, 2016, the habeas corpus court entered an order denying the petition, which provided in part:

> The court finds that the omission of the mandatory provision of community supervision for life renders the sentence for attempted aggravated rape void. However, nothing in the record has established that the illegal sentence was a material bargained-for element of the plea agreement, which included a [forty]-year sentence on a reduced charge of second[-]degree murder. The [c]ourt finds that the Petitioner has not carried his burden of showing that the absence of the community supervision component was a material component of the plea bargain. Therefore, the Petitioner's convictions for attempted aggravated rape and second[-]degree murder shall remain intact, and he is not entitled to withdraw his plea of guilty in

this matter. The [c]ourt finds that the only remedy to which the Petitioner is entitled is the correction of his sentence to remove the illegality by imposing the condition of community supervision for life.

The habeas corpus court ordered the case transferred to Davidson County Criminal Court for entry of an amended judgment of conviction for attempted aggravated rape providing community supervision for life.

On appeal, Petitioner claimed "that the omission of community supervision for life was a material, bargained-for element of his plea agreement." *Alejandro Avila[-]Salazar v. State*, No. M2016-01336-CCA-R3-HC, 2017 WL 2334880, at *1 (Tenn. Crim. App. May 30, 2017), *perm. app. denied* (Tenn. Sept. 21, 2017), *cert. denied*, 138 S. Ct. 998, (2018). Based on the guilty plea hearing transcript, this court determined that

> the disposition of the Petitioner's first[-]degree felony murder charge, which carried a mandatory sentence of life or life without parole, was more likely the material element of his plea agreement. Indeed, the overwhelming majority of the guilty plea hearing was spent on the Petitioner's plea to the lesser charge of second[-]degree murder, and his plea to attempted aggravated rape was not mentioned until the very end of the hearing when the trial court had to inform the parties that the Petitioner had an additional charge to resolve.

*Id* at *3. This court noted that, "although the Petitioner's attempted aggravated rape sentence [wa]s void," because Petitioner failed to show that his illegal sentence was a material element of his plea agreement, his convictions remained intact and that "his only remedy [wa]s the correction of the sentence." *Id.* at *2 (citing *Summers v. Fortner*, 267 S.W.3d 1, 6-7 (Tenn. Crim. App. 2008)). This court determined that the habeas corpus court properly denied the petition and transferred the case "to the convicting court for entry of a corrected judgment adding the condition of community supervision for life." *Id.*

**Amended Judgment.** As ordered, the Davidson County Criminal Court entered an amended judgment for attempted aggravated rape. The amended judgment contained an "X" in the box before "[p]ursuant to [Tennessee] [Code] [Annotated section] 39-13-524

- 5 -

[Petitioner] is sentenced to community supervision for life following sentence expiration." The amended judgment in the record does not have a stamped filed date, and the "date of entry" is the same as on the original judgment, September 6, 2006.

*State v. Alejandro Avila-Salazar*, No. M2019-01143-CCA-R3-PC, 2020 WL 241605, at *1–2 (Tenn. Crim. App., Jan. 15, 2020), *no perm. app. filed*; *see also Alejandro Avila Salazar v. State,* No M2016-01336-CCA-R3-HC, 2017 WL 2334880 (Tenn. Crim. App., May 30, 2017); *Alejandro Avila-Salazar v. State*, No. M2014-01665-CCA-R3-HC, 2015 WL 739669 (Tenn. Crim. App. Feb. 20, 2015); *Alejandro Avila-Salazar v. State*, No. M2008-02120-CCA-R3-PC, 2008 WL 3029604 (Tenn. Crim. App., Sept. 22, 2009).

A summary of the proof presented at the hearing on Petitioner's 2006 post-conviction hearing as set forth by this court on appeal is as follows:

> The Petitioner, who had no previous experience in the legal system, testified that trial counsel met with him only three times. Each meeting occurred in jail. The Petitioner, who is not fluent in English, communicated with trial counsel using an interpreter who, he said, was not very skilled in Spanish. The Petitioner said trial counsel assured him he would receive only three to four years in jail, when in fact the Petitioner's plea agreement offered an effective sentence of forty years. The Petitioner also alleged that trial counsel did not discuss evidence with him, allow him to review discovery materials provided by the State, or tell him that the State had a surveillance video of him leaving the laundromat at which the crime occurred. Trial counsel also did not tell the Petitioner exactly what would happen if he went to trial and lost, advising only that the Petitioner would spend the rest of his life in prison. The Petitioner said he desperately wanted to go to trial, but that trial counsel resisted and called the Petitioner "a stupid young man." The Petitioner also asserted that trial counsel never tried to suppress the statement he had made to police in which he admitted choking the victim with his belt while attempting to rape her.
>
> Although trial counsel told the Petitioner he was allowed to speak at his plea acceptance hearing, the Petitioner testified that trial counsel instructed him not to say anything except "yes" to the judge's questions. When the judge said that the Petitioner would be sentenced to forty years, the Petitioner turned to trial counsel for clarification. Trial counsel told him not to worry and that he would receive three to four years.

On cross-examination, the Petitioner confirmed that he had, at his plea acceptance hearing, agreed that he understood he would be sentenced to forty years. He also had affirmed that he had no complaints about trial counsel at that time, that he understood the possible sentences for the offenses with which he had been charged, and that he understood the rights he was waiving by declining to go to trial. The Petitioner also confirmed that he had asked his original lawyer, an assistant public defender, to withdraw because she was "not working for him," but never complained about trial counsel or his interpreter. When asked at his post-conviction hearing why he believed trial counsel was ineffective, the Petitioner said, "As a defense attorney he should have taken at least one charge from me." The Petitioner said he would not have pleaded guilty if he and trial counsel had met more often or if he had understood his plea agreement or his legal options.

Trial counsel testified for the State at the post-conviction hearing. He said that he and the Petitioner met four times in jail and at least six more times in the courthouse. Trial counsel brought an interpreter to every meeting after the first one. The case involved "massive discovery," including audiotapes, a video, police reports, and pictures of the crime scene. Trial counsel reviewed these items with the Petitioner a number of times, including the Petitioner's inculpatory statement to police. The two did not watch the surveillance video because the Petitioner said he had already seen it.

The Petitioner's only defense was that his co-defendant was responsible; trial counsel noted, however, that the Petitioner's statement to police was contrary to this defense. The Petitioner wanted to go to trial, however. Although trial counsel advised him against it, he told the Petitioner he would try the case. Trial counsel discussed the State's offer with the Petitioner many times, relaying that the State offered a forty-year sentence at 100%, and that the Petitioner might get a maximum of 15% of that sentence reduced for good behavior. He told the Petitioner that he would receive fifty-one years if convicted of felony murder. He also discussed lesser-included offenses, but did not believe the Petitioner would be convicted of a lesser-included offense.

Before his last meeting with the Petitioner, trial counsel had prepared to set the case for trial. During the meeting, trial counsel reiterated his opinion that the Petitioner should not go to trial. The Petitioner had tears in his eyes and agreed to plead guilty because he did not

want to spend the rest of his life in jail. Trial counsel confirmed that the forty-year sentence appeared on the plea petition the Petitioner signed.

Trial counsel said he never told the Petitioner he would receive three to four years in jail. He also never told the Petitioner not to say anything but "yes" at his plea acceptance hearing. Trial counsel also confirmed that he had filed a motion to suppress the Petitioner's statement to police but that the motion was denied following a hearing. The Petitioner never mentioned any problem understanding the interpreter.

*Alejandro Avila-Salazar*, 2008 WL 3029604, at *1-2.

On July 30, 2018, after the amended judgment was filed, Petitioner filed a petition for post-conviction relief claiming that trial counsel was ineffective for failing to advise him that he would be subject to community supervision for life on his attempted aggravated rape sentence and therefore, his guilty plea to both second-degree murder and attempted aggravated rape was not voluntarily, knowingly, or intelligently entered and should be set aside. *Alejandro Avila-Salazar*, 2020 WL 241605, at *1-2. The State offered to dismiss the attempted aggravated rape charge as a courtesy, but Petitioner said that he would only agree to a dismissal of both charges, which the State refused. *Id.* at *2-3. A post-conviction hearing was held, and Petitioner relied on his pleadings rather than presenting proof at the hearing. *Id.*

On June 4, 2019, the post-conviction court entered an order dismissing Petitioner's post-conviction petition finding that the petition did not meet any exception that allowed for the filing of a second post-conviction petition. *Alejandro Avila-Salazar*, 2020 WL 241605, at *3-4. On appeal, this court reversed the order dismissing the post-conviction petition and made the following findings:

Petitioner was not sentenced to community supervision for life at the time his first petition for post-conviction relief was decided. It would be unreasonable to expect Petitioner to have made the claim he makes in the 2018 Petition - that his guilty pleas were not entered voluntarily, knowingly, or intelligently because counsel was ineffective for failing to advise him that he would be subject to community supervision for life - before he was actually sentenced to community supervision for life, even if he was aware at an earlier date that his sentence was illegal. Petitioner's first meaningful opportunity to seek post-conviction relief on that claim arose when the trial court entered an amended judgment sentencing Petitioner to community supervision for life. Because the amended judgment

imposed a new, *more punitive* sentence, the amended judgment and
the original judgment are not a "single judgment" under Tennessee
Code Annotated section 40-30-102(c). Therefore, the 2018 Petition
was not a second petition for post-conviction relief filed attacking a
single judgment.

*Id*. at *4-5 (emphasis in original).

This court remanded the case for a ruling on the merits of Petitioner's claim of
ineffective assistance of counsel. On remand, the post-conviction court vacated
Petitioner's guilty plea to attempted aggravated rape but upheld the plea as to second-
degree murder. In reaching its decision, the post-conviction court concluded:

There was no hearing conducted in this case, and both parties agreed
to go forward on the filings submitted. In his petition, Petitioner
asserted that he was "specifically advised by his attorney of record .
. . that he would not receive anything approaching a life sentence or
any lifetime supervision that extended past his lawful period of
confinement." He further asserted that he would not have accepted
the plea had he known of the mandatory community supervision for
life component. The State offered no evidence to rebut those
assertions, nor did it contest that Petitioner was prejudiced by his
attorney's and this court's failure to advise him of this condition of
his plea to Count 2.

Therefore, Petitioner's guilty plea to Count 2 of the indictment in
this case is hereby VACATED. The conviction as to Count 1, which
was found by the appellate court to be the material element in
Petitioner's guilty plea, stands.

## Analysis

On appeal, Petitioner argues that the post-conviction court erred by not vacating his
guilty plea to second-degree murder when it vacated his plea to attempted aggravated rape.
He contends that the guilty plea to both counts of the indictment was "a single contractual
agreement, and that any breach is material." Petitioner further argues that the plea
agreement "was a single document that listed both counts and conditions of the plea," that
he signed "this sole agreement and believed that the plea agreements to both counts were
a single, inseverable agreement," and the "omission of the lifetime supervision requirement
was an inducement to sign the plea agreement to both counts, because he wouldn't have
accepted the plea had he known of this condition." The State argues that the post-
conviction court erred by vacating Petitioner's attempted aggravated rape conviction
because Petitioner failed to meet his burden of proof after asserting in his post-conviction

petition that trial counsel was ineffective for failing to advise him that he would be subject to community supervision for life for his attempted aggravated rape conviction. The State asserts that Petitioner failed to "prove a reasonable probability that, but for trial counsel's failure to advise him of the community supervision for life requirement, he would not have pleaded guilty and would have insisted on going to trial," and therefore, Petitioner failed to prove prejudice. We agree with the State.

Initially, in *State v. Ward*, 315 S.W.3d 461, 464 (Tenn. 2010), our supreme court addressed a trial court's failure to advise a defendant during a guilty plea hearing of the consequences of lifetime community supervision. The court held that "the mandatory lifetime supervision requirement is an additional part of a defendant's sentence[; therefore] the trial court is constitutionally required to inform the defendant of the supervision requirement as part of the plea colloquy." If a trial court does not inform a defendant of this requirement, the conviction must be set aside unless the State proves that the error is harmless beyond a reasonable doubt. *Id.* at 474-476. In *Ward*, the court remanded the case to the trial court to vacate the judgment of conviction so that the defendant could withdraw his guilty plea and stand trial on the original charge. *Id.* at 477. In the present case, neither the trial court nor trial counsel advised Petitioner of the lifetime supervision requirement. However, *Ward* is not to be applied retroactively in collateral proceedings such as a post-conviction proceeding. *Bush v. State*, 428 S.W.3d 1, 21(Tenn. 2014). Petitioner pled guilty on June 6, 2006; the supreme court's decision in *Ward* was not filed until July 7, 2010. Therefore, *Ward* was not applicable at the time Petitioner entered his guilty plea, and the extent to which the post-conviction court relied on *Ward* to vacate Petitioner's conviction for attempted aggravated rape is misplaced. *See Dameion Nolan v. State*, No. E2012-00429-CCA-R3-PC, 2013 WL 3353333, at *7 (Tenn. Crim. App., June 28, 2013).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697. Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). The factual findings of the post-conviction court are binding on an appellate court unless the evidence in the record preponderates against those findings. *Dellinger*, 279 S.W.3d at 294. The post-conviction court's application of law to its factual findings is reviewed de novo with no presumption of correctness. *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011). A claim of ineffective assistance of counsel presents a mixed question of law and fact that is subject to de novo

review with no presumption of correctness. *Id.*; *Dellinger*, 279 S.W.3d at 294; *Pylant v. State*, 263 S.W.3d 854, 867 (Tenn. 2008).

Review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006). Deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *Cooper v. State,* 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome" of the trial. *Id.* We also apply the standard in Strickland to determine deficiency when reviewing "challenges to guilty pleas based on ineffective assistance of counsel." *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In the context of a guilty plea, to demonstrate that trial counsel's deficient performance prejudiced the defense, a petitioner must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a petitioner must establish both deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them. *See Goad*, 938 S.W.2d at 370.

In this case, we agree with the post-conviction court that trial counsel rendered deficient performance by failing to advise Petitioner that he was subject to mandatory community supervision for life for his attempted aggravated rape conviction at the time that he entered his plea. *Calvert*, 342 S.W.3d at 490. However, we conclude that Petitioner has not demonstrated that he was prejudiced by trial counsel's deficient performance. Petitioner did not present any evidence at the post-conviction hearing and relied solely on his pleadings. "[T]he Post-Conviction Procedure Act requires a petitioner to testify at the post-conviction hearing 'if the petition raises substantial questions of fact as to events in which the petitioner participated.'" *Timothy Evans v. State*, No. E2017-00400-CCA-R3-PC, 2018 WL 1433396, at *4 (Tenn. Crim. App., Mar. 22, 2018) (quoting Tenn. Code Ann.

§ 40-30-110(a) and citing Tenn. Sup. Ct. R. 28, § 8(C)(1)(b)); *Christopher M. Heath v. State*, No. M2016-01906-CCA-R3-PC, 2017 WL 3382804, at \*4-5 (Tenn. Crim. App., Aug. 7, 2017). Although the parties agreed that Petitioner was not advised of the community supervision for life requirement, he did not present any proof at the post-conviction hearing that he would not have pled guilty to attempted aggravated rape had he been advised of the requirement. Therefore, Petitioner has failed to prove prejudice.

As pointed out by the State, the evidence against Petitioner was overwhelming, and he faced the possibility of a mandatory sentence of life or life without parole for his first-degree murder charge. At the post-conviction hearing on Petitioner's 2006 post-conviction petition, trial counsel testified that he advised Petitioner that he was likely to be convicted of first-degree felony murder if the case went to trial rather than a lesser-included offense and that Petitioner would receive a fifty-one-year sentence if convicted of felony murder. *Alejandro Avila-Salazar*, 2009 WL 3029604, at \*2.

As previously pointed out by this court concerning the denial of Petitioner's habeas corpus petition, the "overwhelming majority" of Petitioner's guilty plea hearing was focused on Petitioner's plea to second-degree murder as a lesser-included offense of first-degree murder, and "his plea to attempted aggravated rape was not mentioned until the very end of the hearing when the trial court had to inform the parties that [Petitioner] had an additional charge to resolve." *Alejandro Avila-Salazar*, 2017 WL 2334880, at \*3. This court further noted that disposition of the first-degree murder charge was "more likely the material element" of Petitioner's plea agreement, and Petitioner had not presented "any proof from the record that there [was] a 'reasonable probability' that the proceeding would have been different had the attempted rape sentence been legal." *Id.*

Petitioner has failed to show that but for trial counsel's mistake in not advising him of the mandatory community supervision for life requirement, he would not have pled guilty and would have proceeded to trial. Because Petitioner failed to prove prejudice, the post-conviction court erred by concluding that Petitioner was entitled to relief on his claim of ineffective assistance of counsel, and its judgment in vacating Petitioner's conviction for attempted aggravated rape is reversed.

Petitioner also claims that the State breached the plea agreement and that Petitioner's convictions for both second-degree murder and attempted aggravated rape should be vacated. The State's breach of a plea agreement may be a ground for post-conviction relief. *Harris v. State*, 875 S.W.2d 662 (Tenn. 1994). However, in this case there was no material breach of the plea agreement by the State. As pointed out above in this opinion, the majority of Petitioner's guilty plea hearing was focused on Petitioner's plea to second-degree murder to avoid a life sentence for felony murder. There was no promise or agreement by the State that Petitioner would not be subject to mandatory lifetime community supervision. There is no indication in the record that Petitioner relied on any such promise or agreement concerning lifetime community supervision in coming

to terms with the State. *Alejandro Avila-Salazar*, 2017 WL 2334880, at \*3; *Matthew B. Foley v. State*, M2018-01963-CCA-R3-PC, 2020 WL 957660, at \*6 (Tenn. Crim. App., Feb. 27, 2020) *no perm. app. filed*. Petitioner is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is reversed, and the case is remanded for reinstatement of the original judgment of conviction and sentence previously imposed for attempted aggravated rape.

_____
JILL BARTEE AYERS, JUDGE